*791 OPINION.
MijRdock :
The first assignment of error is that the Commissioner failed to allow the deduction of $7,360.40, the amount paid to the United States in respect of final settlement of claims under war contracts. This has been disposed of by the admission of the respondent’s counsel at the hearing, that the amount in question should be excluded from gross income rather than deducted as an item of expense. The net income shown in the deficiency notice should be reduced therefore, by the sum of $7,360.40.
The second assignment of error is that the Commissioner failed to correct an understatement of $130,104.30 in the inventory of December 31, 1918, which is the opening inventory for 1919, and that failure to correct the inventory has resulted in an overstatement of net income of a corresponding amount for 1919. In its return for 1918, the petitioner computed the cost of goods sold by using a closing inventory valued at $942,398.03. It computed the cost of goods sold in the return for 1919 by using an opening inventory of the same amount. If the petitioner is correct in its contention that the inventory has been understated by $130,104.30, then the net incomes of 1918 and 1919 have been understated and overstated, respectively, by like amounts.
The petitioner asserts that the error in the inventory is due to the pricing of 657,573 pounds of 10 ton rough sheared plate and 899,892 pounds of 5 ton rough sheared plate on hand at the plants of subcontractors at December 31, 1918, at the average cost to manufacture such materials in its own plant, to wit: 23.58 cents per pound. It contends that a large portion of these materials was purchased from the Hussey-Binns Steel Co. at an actual cost of 37.17 cents per pound. All of the rough sheared plate manufactured in the petitioner’s mills and purchased from the Hussey-Binns Steel Co. was shipped to subcontractors’ mills for fabrication into finished armor *792 plate. At the subcontractors’ mills these manufactured and purchased materials were intermingled indiscriminately. The petitioner asks that we determine what portions of these materials were manufactured in its own mills by taking the same proportion of each as the total quantity of rough sheared plate manufactured in its mills, to wit: 2,956,739 pounds, bears to the total quantity of rough sheared plate shipped to subcontractors, to wit: 5,373,877 pounds, and that the balance of the materials in the inventory be regarded as having been purchased at a cost of 37.17 cents per pound. On this basis the petitioner contends for, and asks us to find, an average cost for the 10 ton and 5 ton rough sheared plate manufactured and purchased of 30.81 cents per pound and 33.7 cents per pound, respectively.
We can not say upon the evidence before us that the inventory of December 31,1918, as twice returned by the petitioner and apparently as often accepted by the respondent, is clearly incorrect. It is only by indulging, as the petitioner asks us to do, in the probabilities of the matter that there appears to be any force whatever in the petitioner’s contentions. But whatever the probabilities may seem to be, they are outweighed by other considerations' of greater importance. The respondent has determined that the inventory as twice returned by the petitioner was correctly valued, both as to manufactured and purchased materials, and the prima facie correctness of that determination can only be overcome by satisfactory proof of error, and not by mere indulgence in the mathematical probabilities of the situation. In W. P. Weaver, 2 B. T. A. 709, we were confronted with a somewhat similar situation, and we refused to disturb the respondent’s determination as to the value of the inventory of the preceding year, holding that “ Determinations of the Commissioner involving inventories which have compensating effects upon succeeding taxable years are not to be disturbed except by clear and convincing evidence of error, particularly in cases in which the taxpayer has received the benefit of alleged error in an earlier year barred at the time of appeal to this Board by the statute of limitations.”
We do not have the year 1918 before us, and if we did have, it is doubtful that the petitioner would have raised this issue, since, if it is correct in its contention, the net income of that year has been understated by the amount of the alleged error in the inventory. Thus, holding to the advantage which it has already secured in 1918, the petitioner seeks to gain a like advantage for the second time in computing the net income for 1919. But in this it can not prevail without more convincing evidence of error than that now in the record. The respondent’s determination as to the value of the inventory at December 31, 1918, and its resulting effect upon net income and invested capital will not be disturbed.
*793 In determining the amount of current earnings available for distribution, the Commissioner has deducted a tentative income and profits tax. The deduction of such a tax has resulted in a reduction of $61,474.91 in invested capital. The Commissioner’s action is contrary to the decision of this Board in L. S. Ayers & Co., 1 B. T. A. 1135. The invested capital shown by the deficiency notice should be increased by the amount of $61,474.91.

Judgment will be entered wider Rule 50.